KILPATRICK TOWNSEND & STOCKTON LLP
GREGORY S. GILCHRIST (State Bar No. 111536)
GIA L. CINCONE (State Bar No. 141668)
RYAN T. BRICKER (State Bar No. 269100)
CALLA E. YEE (State Bar No. 306652)
Two Embarcadero Center, Suite 1900
San Francisco, California  94111
Telephone:  (415) 576-0200
Facsimile:  (415) 576-0300
Email:      ggilchrist@townsend.com
            gcincone@townsend.com
            rbricker@kilpatricktownsend.com
            cyee@kilpatricktownsend.com

Attorneys for Plaintiff
LEVI STRAUSS & CO.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEVI STRAUSS & CO.,<br><br>             Plaintiff,<br><br>      v.<br><br>BLUE IN GREEN, LLC; STUDIO D'ARTISAN INTERNATIONAL CO., LTD.; FULL COUNT CO., LTD.; SAMURAI CO., LTD.,<br><br>             Defendants. | Case No. 3:16-cv-7011<br><br>**COMPLAINT FOR FEDERAL TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, AND DILUTION; CALIFORNIA DILUTION, TRADEMARK INFRINGEMENT, AND UNFAIR COMPETITION; AND CIVIL CONTEMPT OF INJUNCTION (INJUNCTIVE RELIEF SOUGHT)**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Levi Strauss & Co. ("LS&Co.") complains against defendants Blue in Green, LLC, Studio D'Artisan International Company Co., Ltd., Full Count Co., Ltd., and Samurai Co., Ltd. (collectively "Defendants") as follows:

**JURISDICTION, VENUE, AND INTRA-DISTRICT ASSIGNMENT**

1.     Plaintiff LS&Co.'s first, second, and third claims arise under the Trademark Act of 1946 (the Lanham Act), as amended by the Federal Trademark Dilution Act of 1995 (15 U.S.C. §§ 1051 *et seq*.).  This Court has jurisdiction over such claims pursuant to 28 U.S.C. §§ 1338(a) and 1338(b) (trademark and unfair competition); 28 U.S.C. § 1331 (federal question); and 15 U.S.C.

1  § 1121 (Lanham Act).  This Court has supplemental jurisdiction over the remaining state law claims
2  under 28 U.S.C. § 1367.  This Court also has jurisdiction pursuant to the prior judgments against
3  Defendants in Case No. C 07-0245.  Those judgments are attached here as Exhibits A and B.

4        2.      LS&Co. is informed and believes venue is proper in this Court under 28 U.S.C.
5  § 1391(b) because Defendants transact affairs in this district and because a substantial part of the
6  events giving rise to the claims asserted arose in this district.

7        3.      Intra-district assignment to any division of the Northern District is proper under
8  Local Rule 3-2(c) and the Assignment Plan of this Court as an "Intellectual Property Action."

9  **PARTIES**

10        4.      LS&Co. is a Delaware corporation which has its principal place of business at Levi's
11  Plaza, 1155 Battery Street, San Francisco, California 94111.  Operating since approximately the
12  1850s, LS&Co. is one of the oldest and best known apparel companies in the world.  It manu-
13  factures, markets, and sells a variety of apparel, including its traditional LEVI'S® brand products.

14        5.      LS&Co. is informed and believes that defendant Blue in Green, LLC ("Blue in
15  Green") is a New York limited liability company with its principal place of business at 8 Greene
16  Street, Ground Floor, New York, New York 10013.  LS&Co. is informed and believes that Blue in
17  Green distributes, markets, advertises, and/or sells, or has distributed, marketed, advertised, and/or
18  sold, jeans under the brand names STUDIO D'ARTISAN, FULL COUNT, SAMURAI, ETERNAL,
19  and KAPITAL throughout the United States, including in this judicial district.  LS&Co. is further
20  informed and believes that Blue in Green has authorized, directed, and/or actively participated in the
21  wrongful conduct alleged herein.  Blue in Green is also party to a consent judgment and permanent
22  injunction issued by this Court as a resolution of LS&Co.'s prior lawsuit (Case No. C 07-0245).
23  That injunction forbids Blue in Green from continuing to sell certain products bearing infringing
24  designs (including, specifically, STUDIO D'ARTISAN, FULL COUNT, and SAMURAI jeans), and
25  any other products bearing designs that are substantially similar to those infringing designs and/or
26  LS&Co.'s trademarks.  A copy of the judgment and injunction is attached as Exhibit B.

27        6.      LS&Co. is informed and believes that defendant Studio D'Artisan International Co.,
28  Ltd. ("Studio D'Artisan") is a Japanese business entity with its principal place of business at 1-2-16,

1 | Kita-horie, Nishi-ku, Osaka, Japan. LS&Co. is informed and believes that Studio D'Artisan
2 | manufactures, distributes, and/or sells, or has manufactured, distributed, and/or sold, jeans under the
3 | brand name STUDIO D'ARTISAN which are offered for sale and sold throughout the United States,
4 | including in this judicial district. LS&Co. is further informed and believes that Studio D'Artisan has
5 | authorized, directed, and/or actively participated in the wrongful conduct alleged herein. Studio
6 | D'Artisan is also party to a default judgment and injunction issued by this Court as a resolution
7 | of LS&Co.'s prior lawsuit (Case No. C 07-0245). That injunction forbids Studio D'Artisan from
8 | continuing to sell jeans bearing designs that infringe LS&Co.'s trademarks. A copy of the default
9 | judgment and permanent injunction is attached as Exhibit A, and a copy of the complaint in that
10 | action and related exhibits identifying the particular STUDIO D'ARTISAN designs that were the
11 | subject of the complaint is attached as Exhibit C.

12 |     7.    LS&Co. is informed and believes that defendant Full Count Co., Ltd. ("Full Count")
13 | is a Japanese business entity with its principal place of business at 1-10-14 Kitahorie, Full Count
14 | Building, Osaka-shi, Osaka, 〒550-0014, Japan. LS&Co. is informed and believes that Full Count
15 | manufactures, distributes, and/or sells, or has manufactured, distributed, and/or sold, jeans under the
16 | brand name FULL COUNT which are offered for sale and sold throughout the United States, includ-
17 | ing in this judicial district. LS&Co. is further informed and believes that Full Count has authorized,
18 | directed, and/or actively participated in the wrongful conduct alleged herein. Full Count is also party
19 | to a default judgment and injunction issued by this Court as a resolution of LS&Co.'s prior lawsuit
20 | (Case No. C 07-0245). That injunction forbids Full Count from continuing to sell jeans bearing
21 | designs that infringe LS&Co.'s trademarks. A copy of the default judgment and permanent
22 | injunction is attached as Exhibit A, and a copy of the complaint in that action and related exhibits
23 | identifying the particular FULL COUNT designs that were the subject of the complaint is attached
24 | as Exhibit C.

25 |     8.    LS&Co. is informed and believes that defendant Samurai Co., Ltd. ("Samurai") is
26 | a Japanese business entity with its principal place of business at 2-2-11-206, Higashi Naruocho,
27 | Nishinomiya-shi, Tokyo, Japan. LS&Co. is informed and believes that Samurai manufactures,
28 | distributes, and/or sells, or has manufactured, distributed, and/or sold, jeans under the brand name

1  SAMURAI which are offered for sale and sold throughout the United States, including in this
2  judicial district.  LS&Co. is further informed and believes that Samurai has authorized, directed,
3  and/or actively participated in the wrongful conduct alleged herein.  Samurai is also party to a
4  default judgment and injunction issued by this Court as a resolution of LS&Co.'s prior lawsuit (Case
5  No. C 07-0245).  That injunction forbids Samurai from continuing to sell jeans bearing designs that
6  infringe LS&Co.'s trademarks.  A copy of the default judgment and permanent injunction is attached
7  as Exhibit A, and a copy of the complaint in that action and related exhibits identifying the particular
8  SAMURAI designs that were the subject of the complaint is attached as Exhibit C.

## FACTS AND ALLEGATIONS COMMON TO ALL CLAIMS

**LS&Co.'s Use of Its Trademarks**

11       9.      LS&Co. marks its LEVI'S® brand products with a set of trademarks that are famous
around the world.  For many years prior to the events giving rise to this Complaint and continuing
to the present, LS&Co. annually has spent great amounts of time, money, and effort advertising
and promoting the products on which its trademarks are used and has sold many millions of these
products all over the world, including throughout the United States and in California.  Through these
investments and large sales, LS&Co. has created considerable goodwill and a reputation for quality
products.  LS&Co. continuously has used these trademarks, some for well over a century, to
distinguish its products.

19       10.     Most of LS&Co.'s trademarks are federally registered; all are in full force and effect,
valid and protectable, and exclusively owned by LS&Co.  LS&Co. continuously has used each of its
trademarks, from the registration date or earlier, until the present and during all time periods relevant
to LS&Co.'s claims.

**LS&CO.'s Arcuate Stitching Design Trademark**

24       11.     Among its marks, LS&Co. owns the famous Arcuate Stitching Design Trademark
(the "Arcuate trademark"), which consists of a distinctive pocket stitching design that is the oldest
known apparel trademark in the United States still in continuous use.  LS&Co. has used the Arcuate
trademark continuously since 1873 in interstate commerce on clothing products.  LS&Co. first used
the Arcuate trademark on jeans and later used it on other products as well.

1      12.     LS&Co. owns, among others, the following United States and California
2  Registrations for its Arcuate trademark, attached as Exhibit D.  The federal registrations have
3  become incontestable under the provisions of 15 U.S.C. § 1065.
4            a.     U.S. Registration No. 404,248 (first used as early as 1873;
5                   registered November 16, 1943);
6            b.     U.S. Registration No. 1,139,254 (first used as early as 1873;
7                   registered September 2, 1980);
8            c.     U.S. Registration No. 2,794,649 (first used as early as 1873;
9                   registered December 16, 2003); and
10           e.     California Registration No. 088399 (first used as early as 1873;
11                  registered August 24, 1988).
12      13.    The Arcuate trademark is valid and protectable, and exclusively owned by LS&Co.
13 The Arcuate trademark is famous and is recognized around the world and throughout the United
14 States by consumers as signifying authentic, high quality LEVI'S® products.  The Arcuate trademark
15 became famous prior to Defendants' conduct that is the subject of this Complaint.
16      14.    Examples of LS&Co.'s use of its Arcuate trademark on LEVI'S® jeans are attached
17 as Exhibit E.

**LS&Co.'s Tab Device Trademark**

19      15.    LS&Co. also owns the famous Tab Device Trademark (the "Tab trademark"), which
20 consists of a textile marker or other material sewn into one of the regular structural seams of the
21 garment.  LS&Co. uses the Tab trademark on LEVI'S® jeans and a variety of other clothing
22 products.
23      16.    LS&Co. began to display the Tab trademark on the rear pocket of its pants in 1936
24 when its then National Sales Manager, Leo Christopher Lucier, proposed placing a folded cloth
25 ribbon in the structural seams of the rear pocket.  The purpose of this "tab" was to provide "sight
26 identification" of LS&Co.'s products.  Given the distinctiveness of the Tab trademark, Mr. Lucier
27 asserted that "no other maker of overalls can have any other purpose in putting a colored tab on an
28 / / /

outside patch pocket, unless for the express and sole purpose of copying our mark, and confusing the customer."

17. LS&Co. owns, among others, the following United States Registrations for its Tab trademark, attached as Exhibit F. These registrations have become incontestable under the provisions of 15 U.S.C. § 1065.

    a. Registration No. 356,701 (first used as early as September 1, 1936; registered May 10, 1938);

    b. Registration No. 516,561 (first used as early as September 1, 1936; registered October 18, 1949);

    c. Registration No. 577,490 (first used as early as September 1, 1936; registered July 21, 1953);

    d. Registration No. 774,625 (first used as early as May 22, 1963; registered August 4, 1964);

    e. Registration No. 775,412 (first used as early as October 9, 1957; registered August 18, 1964); and

    f. Registration No. 1,157,769 (first used as early as September 1, 1936; registered June 16, 1981).

18. The Tab trademark is valid and protectable, and exclusively owned by LS&Co. The Tab trademark is famous and recognized around the world and throughout the United States by consumers as signifying authentic, high quality LEVI'S® jeans. The Tab trademark became famous prior to Defendants' conduct that is the subject of this Complaint.

19. Examples of LS&Co.'s use of its Tab trademark on LEVI'S® jeans are attached as Exhibit G.

**LS&Co.'s Shirt Tab Trademark**

20. LS&Co. also owns the famous Shirt Tab Device Trademark (the "Shirt Tab trademark"), which consists of a textile marker or other material sewn into to the exterior of a shirt pocket. LS&Co. has used the Shirt Tab trademark continuously since 1969 in interstate commerce and on clothing products.

1   21.   LS&Co. owns, among others, the following United States and California
2   Registrations for its Shirt Tab trademark, attached as Exhibit H.  These registrations have become
3   incontestable under the provisions of 15 U.S.C. § 1065.
4         a.   U.S. Registration No. 2,726,253 (first used as early as March 7,
5              1969; registered June 17, 2003); and
6         b.   California Registration No. 052312 (first used as early as
7              March 7, 1969; registered June 12, 1974).
8   22.   The Shirt Tab trademark is valid and protectable, and exclusively owned by LS&Co.
9   The Shirt Tab trademark is famous and recognized around the world and throughout the United
10  States by consumers as signifying authentic, high quality LEVI'S® products.  The Shirt Tab
11  trademark became famous prior to Defendants' conduct that is the subject of this Complaint.
12  23.   Examples of LS&Co.'s use of the Shirt Tab trademark on LEVI'S® products are
13  attached as Exhibit I.
14  **LS&Co.'s Two Horse Design Trademark**
15  24.   LS&Co. also owns the Two Horse Design and Two Horse Label Design Trademarks
16  (the "Two Horse trademarks").  LS&Co. has used the Two Horse trademarks continuously since
17  1886 in interstate commerce and on clothing products.
18  25.   LS&Co. owns, among others, the following United States Registrations for its Two
19  Horse trademarks, attached as Exhibit J.  These registrations have become incontestable under the
20  provisions of 15 U.S.C. § 1065.
21        a.   Registration No. 523,665 (first used as early as January 1, 1886;
22             registered April 1, 1950);
23        b.   Registration No. 1,140,853 (first used as early as January 1,
24             1886; registered October 28, 1980);
25        c.   Registration No. 1,095,986 (first used as early as September 30,
26             1973; registered July 11, 1978);
27        d.   Registration No. 1,030,033 (first used as early as December 1,
28             1971; registered January 13, 1976); and

1     e.  California Registration No. 01704 (first used as early as

2       January 1, 1886; registered February 27, 1889).

3  26.  The Two Horse trademarks are valid and protectable, and exclusively owned by
LS&Co.  The Two Horse trademarks are famous and recognized around the world and throughout the United States by consumers as signifying authentic, high quality LEVI'S® products.  The Two Horse trademarks became famous prior to Defendants' conduct that is the subject of this Complaint.

  27.  Examples of LS&Co.'s use of the Two Horse trademarks on LEVI'S® products are attached as Exhibit K.

### LS&Co.'s 500 Series Trademarks

  28.  LS&Co. also owns the distinctive trademarks 501®, 505®, 517®, and 569®, among other marks that consist of three digits starting with a "5" (collectively the "500 Series trademarks"). LS&Co. has used the 500 Series trademarks continuously since as early as the first use dates listed below in interstate commerce on jeans and pants and, by virtue of LS&Co.'s use and promotion of the 500 Series trademarks together, the public recognizes LS&Co. as the source of all apparel products falling within any 500 series.

  29.  LS&CO. owns, among others, the following United States registrations for its 500 Series trademarks, attached as Exhibit L.  The United States registrations for 501®, 505®, and 517® have become incontestable under the provisions of 15 U.S.C. § 1065.

    a.  Registration No. 1,552,985 (first used as early as December 31, 1969; registered August 22, 1989) (501®);

    b.  Registration No. 1,313,554 (first used as early as June 27, 1983; registered January 8, 1985) (505®);

    c.  Registration No. 1,319,462 (first used as early as June 27, 1983; registered February 12, 1985) (517®); and

    d.  Registration No. 2,503,976 (first used as early as May 1, 1998; registered November 6, 2001) (569®).

  30.  The 500 Series trademarks are valid and protectable, and exclusively owned by LS&Co.  The 500 Series trademarks are famous and recognized around the world and throughout the

1  United States by consumers as signifying authentic, high quality LEVI'S® products.  The 500 Series
2  trademarks became famous prior to Defendants' conduct that is the subject of this Complaint.
3      31.    Examples of LS&Co.'s use of the 500 Series trademarks on LEVI'S® jeans are
4  attached as Exhibit M.

**Defendants' Infringement of LS&Co.'s Trademarks**

6      32.    Beginning at some time in the past and continuing until the present, Defendants have
7  manufactured, promoted, and sold garments that infringe and dilute LS&Co.'s trademarks.
8      33.    In particular, LS&Co. is informed and believes that Defendants have manufactured,
9  sourced, marketed, and/or sold substantial quantities of jeans bearing devices that are highly similar
10 to LS&Co.'s trademarks and are likely to confuse consumers about the source of Defendants'
11 products and/or a relationship between Defendants and LS&Co.  LS&Co. is further informed and
12 believes that the jeans sold by Defendants violate the injunctions entered by this Court as a resolu-
13 tion of LS&Co.'s prior lawsuit (Case No. C 07-0245).
14     34.    LS&Co. is informed and believes that defendant Blue in Green has in the past
15 and continues to manufacture, source, market, and/or sell STUDIO D'ARTISAN, FULL COUNT,
16 SAMURAI, ETERNAL, and KAPITAL garments that display designs that are confusingly similar
17 to LS&Co.'s Arcuate, Tab, Shirt Tab, Two-Horse Design, and 500 Series trademarks.  These designs
18 include, without limitation, the designs shown in Exhibit N (the "Blue in Green designs").
19     35.    LS&Co. sent a cease and desist letter to Blue in Green on or around September 28,
20 2016, demanding that it stop marketing and selling jeans bearing designs that are confusingly similar
21 to LS&Co.'s trademarks and violate the Court's injunction.  LS&Co. received a response from Blue
22 in Green's counsel on September 30, 2016.  The response assured LS&Co. that Blue in Green has a
23 policy of removing the infringing elements of these jeans before displaying or selling them.  LS&Co.
24 investigated further and found that, a month after sending its response, Blue in Green continued to
25 sell products that bear confusingly similar marks and violate the Court's injunction, including several
26 of the exact designs prohibited by the injunction (including, without limitation, STUDIO
27 D'ARTISAN, FULL COUNT, and SAMURAI).
28 / / /

1    36.    LS&Co. sent a second letter to Blue in Green's counsel on or around November 17, 2016, stating that, on information and belief, Blue in Green continued to sell products that bear confusingly similar marks and violate the Court's injunction.  On or around November 18, 2016, Blue in Green's counsel informed LS&Co. that Blue in Green required days to investigate the matter.  LS&Co. again found that Blue in Green continued selling products bearing designs that are highly similar to LS&Co.'s trademarks (and that violate the Court's injunction) through an investigation conducted on or around November 23, 2016.

37.    LS&Co. is informed and believes that defendant Blue in Green has manufactured, marketed, and/or sold substantial quantities of products bearing the Blue in Green designs, and has obtained and continues to obtain substantial profits from these sales.

38.    LS&Co. is informed and believes that defendant Studio D'Artisan has in the past and continues to manufacture, source, market, and/or sell STUDIO ARTISAN garments that display designs that are confusingly similar to LS&Co.'s Arcuate, Tab, and Two Horse trademarks.  These designs include, without limitation, the designs shown in Exhibit O (the "Studio D'Artisan designs").

39.    LS&Co. is informed and believes that defendant Studio D'Artisan has manufactured, marketed, and sold substantial quantities of products bearing the Studio D'Artisan designs, and has obtained and continues to obtain substantial profits from these sales.

40.    LS&Co. is informed and believes that defendant Full Count has in the past and continues to manufacture, source, market, and/or sell FULL COUNT garments that display designs that are confusingly similar to LS&Co.'s Arcuate, Tab, and Shirt Tab trademarks.  These designs include, without limitation, the designs shown in Exhibit P (the "Full Count designs").

41.    LS&Co. is informed and believes that defendant Full Count has manufactured, marketed, and sold substantial quantities of products bearing the Full Count designs, and has obtained and continues to obtain substantial profits from these sales.

42.    LS&Co. is informed and believes that defendant Samurai has in the past and continues to manufacture, source, market, and/or sell SAMURAI garments that display designs that are confusingly similar to LS&Co.'s Arcuate, Tab, and 500 Series trademarks.  These designs include, without limitation, the designs shown in Exhibit Q (the "Samurai designs").

43. LS&Co. is informed and believes that defendant Samurai has manufactured, marketed, and sold substantial quantities of products bearing the Samurai designs, and has obtained and continues to obtain substantial profits from these sales.

44. LS&Co. is informed and believes that Defendants' manufacture, marketing, distribution, and sale of infringing products as set forth in this Complaint have resulted in actual confusion among consumers, and that Defendants are aware of such confusion.

45. LS&Co. is informed and believes that Defendants' manufacture, marketing, distribution, and sale of infringing products as set forth in this Complaint have been undertaken with knowledge of and disregard for the Court's prior judgments and permanent injunctions (Exhibits A and B), and that Defendants' conduct constitutes willful and blatant contempt of the Court's injunctions.

46. Defendants' actions have caused and will cause LS&Co. irreparable harm for which money damages and other remedies are inadequate. Unless Defendants are restrained by this Court, Defendants will continue and/or expand the illegal activities and otherwise continue to cause great and irreparable damage and injury to LS&Co. by, among other things:

   a. Depriving LS&Co. of its statutory rights to use and control use of its trademarks;
   b. Creating a likelihood of confusion, mistake, and deception among consumers and the trade as to the source of the infringing products;
   c. Causing the public falsely to associate LS&Co. with Defendants and/or their STUDIO D'ARTISAN, FULL COUNT, SAMURAI, ETERNA,L and KAPITAL brand products, or vice versa;
   d. Causing incalculable and irreparable damage to LS&Co.'s goodwill and diluting the capacity of its trademarks to differentiate LEVI'S® products from others; and
   e. Causing LS&Co. to lose sales of its genuine clothing products.

/ / /

47. Accordingly, in addition to other relief sought, LS&Co. is entitled to injunctive relief against Defendants, their affiliates, licensees, subsidiaries, and all persons acting in concert with them.

**FIRST CLAIM**
**FEDERAL TRADEMARK INFRINGEMENT**
**(15 U.S.C. §§ 1114-1117; Lanham Act § 32)**

48. LS&Co. realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 47 of this Complaint.

49. Without LS&Co.'s consent, Defendants have used, in connection with the sale, offering for sale, distribution, or advertising of its products, designs that infringe upon LS&Co.'s registered Arcuate, Tab, Shirt Tab, Two-Horse Design, and 500 Series trademarks.

50. These acts of trademark infringement have been committed with the intent to cause confusion, mistake, or deception, and are in violation of 15 U.S.C. § 1114.

51. As a direct and proximate result of Defendants' infringing activities, LS&Co. is entitled to recover Defendants' unlawful profits and LS&Co.'s substantial damages under 15 U.S.C. § 1117(a).

52. Defendants' infringement of LS&Co.'s trademarks is an exceptional case and was intentional, entitling LS&Co. to treble the amount of its damages and Defendants' profits, and to an award of attorneys' fees under 15 U.S.C. § 1117(a).

53. LS&Co. is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

**SECOND CLAIM**
**FEDERAL UNFAIR COMPETITION**
**(False Designation of Origin and False Description)**
**(15 U.S.C. § 1125(a); Lanham Act § 43(a))**

54. LS&Co. realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 53 of this Complaint.

55. Defendants' use of the infringing designs tends falsely to describe its products within the meaning of 15 U.S.C. § 1125(a)(1). Defendants' conduct is likely to cause confusion, mistake, or deception by or in the public as to the affiliation, connection, association, origin, sponsorship, or

/ / /

1 approval of Defendants' products, to the detriment of LS&Co. and in violation of 15 U.S.C.
2 § 1125(a)(1).

3     56.     As a direct and proximate result of Defendants' infringing activities, LS&Co. is
4 entitled to recover Defendants' unlawful profits and LS&Co.'s substantial damages under 15 U.S.C.
5 § 1117(a).

6     57.     Defendants' infringement of LS&Co.'s Arcuate, Tab, Shirt Tab, Two-Horse Design,
7 and 500 Series trademarks is an exceptional case and was intentional, entitling LS&Co. to treble the
8 amount of its damages and Defendants' profits, and to an award of attorneys' fees under 15 U.S.C.
9 § 1117(a).

10     58.     LS&Co. is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

**THIRD CLAIM**
**FEDERAL DILUTION OF FAMOUS MARKS**
**(Federal Trademark Dilution Act of 2006)**
**(15 U.S.C. § 1125(c); Lanham Act § 43(c))**

14     59.     LS&Co. realleges and incorporates by reference each of the allegations contained in
15 paragraphs 1 through 58 of this Complaint.

16     60.     LS&Co.'s Arcuate, Tab, Shirt Tab, Two-Horse Design, and 500 Series trademarks are
17 distinctive and famous within the meaning of the Trademark Dilution Revision Act of 2006, 15
18 U.S.C. § 1125(c), and were distinctive and famous prior to Defendants' conduct as alleged in this
19 Complaint.

20     61.     Defendants' conduct is likely to cause dilution of LS&Co.'s Arcuate, Tab, Shirt Tab,
21 Two-Horse Design, and 500 Series trademarks by diminishing their distinctiveness in violation of
22 the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c).

23     62.     LS&Co. is entitled to injunctive relief pursuant to 15 U.S.C. §§ 1116(a) and 1125(c).

**FOURTH CLAIM**
**CALIFORNIA DILUTION AND TRADEMARK INFRINGEMENT**
**(Cal. Bus. & Prof. Code §§ 14245, 14247, 14250)**

26     63.     LS&Co. realleges and incorporates by reference each of the allegations contained in
27 paragraphs 1 through 62 of this Complaint.

28 / / /

64. Defendants' infringement of LS&Co.'s Arcuate, Tab, Shirt Tab, Two-Horse Design, and 500 Series trademarks is likely to cause consumer confusion and dilution of LS&Co.'s marks in violation of California Business & Professions Code sections 14245 and 14247.

65. Defendants infringed and diluted LS&Co.'s Arcuate, Tab, Shirt Tab, Two-Horse Design, and 500 Series trademarks with knowledge and intent to cause confusion, mistake, or deception.

66. Defendants' conduct is aggravated by that kind of willfulness, wantonness, malice, and conscious indifference to the rights and welfare of LS&Co. for which California law allows the imposition of exemplary damages.

67. Pursuant to California Business & Professions Code sections 14247 and 14250, LS&Co. is entitled to injunctive relief and damages in the amount of three times Defendants' profits and three times all damages suffered by LS&Co. by reason of Defendants' manufacture, use, display, or sale of infringing goods.

**FIFTH CLAIM**
**CALIFORNIA UNFAIR COMPETITION**
**(Cal. Bus. & Prof. Code § 17200)**

68. LS&CO. realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 67 of this Complaint.

69. Defendants' conduct as alleged in this Complaint constitutes "unlawful, unfair or fraudulent business act[s] or practice[s] and unfair, deceptive, untrue or misleading advertising" within the meaning of California Business & Professions Code section 17200.

70. As a consequence of Defendants' actions, LS&Co. is entitled to injunctive relief preventing the conduct alleged in this Complaint.

**SIXTH CLAIM**
**CIVIL CONTEMPT OF THIS COURT'S INJUNCTION**
**(15 U.S.C. §§ 1114-1117; 18 U.S.C. § 401(3))**

71. LS&CO. realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 70 of this Complaint.

/ / /

/ / /

1  72. Defendants' conduct as alleged in this Complaint constitutes a violation of this Court's permanent injunctions, entered in Case No. C 07-0245. Defendants are therefore liable for civil contempt of such injunctions.

73. As a consequence of Defendants' actions, sanctions should be imposed against Defendants to coerce obedience of the Court's injunction orders and/or to compensate LS&Co. for losses resulting from Defendants' contemptuous behavior. Pursuant to 15 U.S.C. § 1117(a), LS&Co. is entitled to an award of damages it has sustained or Defendants' profits based on a theory of unjust enrichment. Because Defendants' violation of the Court's injunctions has been willful and blatant, the sanctions and/or damages award should be multiplied.

74. LS&Co. is also entitled to recover its fees in connection with enforcing its rights and the Court's injunctions.

## **PRAYER FOR JUDGMENT**

WHEREFORE, LS&Co. prays that this Court grant it the following relief:

75. Issue an Order to Show Cause Why Defendants Should Not Be Held in Contempt of the Permanent Injunctions entered in Case No. C 07-0245, and/or adjudge that Defendants are in contempt of this Court's permanent injunction orders;

76. Adjudge that LS&Co.'s Arcuate, Tab, Shirt Tab, Two-Horse Design, and 500 Series trademarks have been infringed by Defendants in violation of LS&Co.'s rights under common law, 15 U.S.C. § 1114, and/or California law;

77. Adjudge that Defendants have competed unfairly with LS&Co. in violation of LS&Co.'s rights under common law, 15 U.S.C. § 1125(a), and/or California law;

78. Adjudge that Defendants' activities are likely to dilute LS&Co.'s famous Arcuate, Tab, Shirt Tab, Two-Horse Design, and 500 Series trademarks in violation of LS&Co.'s rights under common law, 15 U.S.C. § 1125(c), and/or California law;

79. Adjudge that Defendants, their agents, employees, attorneys, successors, assigns, affiliates, and joint venturers, and any person(s) in active concert or participation with them, and/or any person(s) acting for, with, by, through, or under any of them, be enjoined and restrained at first during the pendency of this action and thereafter permanently from:

1          a.     Manufacturing, producing, sourcing, importing, selling, offering for sale,
2  distributing, advertising, or promoting any goods that display any words or symbols that so resemble
3  LS&Co.'s Arcuate, Tab, Shirt Tab, Two-Horse Design, and 500 Series trademarks as to be likely to
4  cause confusion, mistake, or deception, on or in connection with any product that is not authorized
5  by or for LS&Co., including, without limitation, any product that bears the Defendants' infringing
6  designs which are the subject of this Complaint and for which Defendant is responsible, or any other
7  approximation of LS&Co.'s trademarks;
8          b.     Using any word, term, name, symbol, device, or combination thereof that
9  causes or is likely to cause confusion, mistake, or deception as to the affiliation or association of
10 Defendant or its products with LS&Co., or as to the origin of Defendants' goods, or any false desig-
11 nation of origin, false or misleading description or representation of fact, or any false or misleading
12 advertising;
13         c.     Further infringing the rights of LS&Co. in and to any of its trademarks in
14 its LEVI'S® brand products or otherwise damaging LS&Co.'s goodwill or business reputation;
15         d.     Further diluting the Arcuate, Tab, Shirt Tab, Two-Horse Design, and
16 500 Series trademarks;
17         e.     Otherwise competing unfairly with LS&Co. in any manner;
18         f.     Continuing to perform in any manner whatsoever any of the other acts
19 complained of in this Complaint; and
20         g.     Continuing to violate this Court's prior injunctions;
21    80.   Adjudge that Defendants be required immediately to supply LS&Co.'s counsel with
22 a complete list of individuals and entities from whom or which it purchased, and to whom or which
23 it sold, offered for sale, distributed, advertised, or promoted, infringing and contemptuous products
24 as alleged in this Complaint;
25    81.   Adjudge that Defendants be required immediately to deliver to LS&Co.'s counsel
26 its entire inventory of infringing and contemptuous products, including, without limitation, pants
27 and any other clothing, packaging, labeling, advertising and promotional material, and all plates,
28 patterns, molds, matrices, and other material for producing or printing such items, that are in its

possession or subject to its control and that infringe LS&Co.'s trademarks and/or violate this Court's prior injunctions as alleged in this Complaint;

82. Adjudge that Defendants, within thirty (30) days after service of the judgment demanded herein, be required to file with this Court and serve upon LS&Co.'s counsel a written report under oath setting forth in detail the manner in which they have complied with the judgment;

83. Adjudge that LS&Co. recover from Defendants its damages and lost profits, and Defendants' profits, in an amount to be proven at trial, as well as punitive damages under California law;

84. Adjudge that Defendants be required to account for any profits that are attributable to its illegal acts, and that LS&Co. be awarded (1) Defendants' profits and (2) all damages sustained by LS&Co., under 15 U.S.C. § 1117, plus prejudgment interest;

85. Adjudge that the amounts awarded to LS&Co. pursuant to 15 U.S.C. § 1117 shall be trebled;

86. Adjudge that the amounts awarded to LS&Co. as a result of Defendants' contemptuous behavior shall be trebled pursuant to 15 U.S.C. § 1117;

87. Order an accounting of and impose a constructive trust on all of Defendants' funds and assets that arise out of Defendants' infringing activities;

88. Adjudge that LS&Co. be awarded its costs and disbursements incurred in connection with this action, including LS&Co.'s reasonable attorneys' fees and investigative expenses in actions against Defendants to enforce LS&Co.'s intellectual property rights;

89. Adjudge that Defendants shall be sanctioned to coerce obedience to this Court's prior injunctions and/or to compensate LS&Co. for losses resulting from the contemptuous behavior, or for both; and

/ / /

/ / /

/ / /

/ / /

/ / /

90. Adjudge that all such other relief be awarded to LS&Co. as this Court deems just and proper.

Dated: December 7, 2016

Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By: /s/ *Ryan T. Bricker*
Ryan T. Bricker

Attorneys for Plaintiff
LEVI STRAUSS & CO.

**DEMAND FOR JURY TRIAL**

LS&Co. demands that this action be tried to a jury.

Dated:  December 7, 2016

Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By: _____ /s/ *Ryan T. Bricker* _____
                    Ryan T. Bricker

Attorneys for Plaintiff
LEVI STRAUSS & CO.