UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEVI STRAUSS & CO.,<br>　　Plaintiff,<br>　v.<br>BLUE IN GREEN, LLC, et al.,<br>　　Defendants. | Case No. 16-cv-07011-WHO<br><br>**ORDER GRANTING ENTRY OF DEFAULT JUDGMENT AND PERMANENT INJUNCTION** |

Plaintiff's motion for entry of default judgment was properly noticed and served and was heard on July 18, 2018, at 2:00pm. Having reviewed the record, including the Supplemental Responses and revised declaration, I GRANT plaintiff's motion for entry of default judgment and enter a judgment and permanent injunction against defaulting defendant Full Count Co., Ltd. as follows:

## I. SUMMARY OF THE COMPLAINT

Plaintiff Levi Strauss & Co. ("LS&Co.") has filed a Complaint alleging trademark infringement, dilution, and unfair competition under federal and California law against Full Count Co., Ltd. ("Defendant" or "Full Count"). LS&Co. also sued a retailer of Full Count products, Blue in Green, LLC, against whom judgment has been entered earlier. (Docket No. 37.) LS&Co. alleges that Full Count has imported, promoted, advertised, distributed, offered, and sold clothing products, including jeans and other apparel, that violate LS&Co.'s rights in a number of its federally registered trademarks, and violates this Court's 2009 Final Judgment and Permanent Injunction, issued on October 19, 2009, in Case No. 4:07-cv-00245- PJH (the "2009 Injunction"). LS&Co. further alleges that many of the allegedly infringing and contemptuous products that Full Count has manufactured, sourced, marketed, offered for sale and/or sold display designs that are confusingly similar to LS&Co.'s Arcuate Stitching Design Trademark (the "Arcuate trademark"),

Tab Device Trademark (the "Tab trademark"), and Shirt Tab Device Trademark (the "Shirt Tab trademark"). Defendant has failed to respond to LS&Co.'s First Amended Complaint and default was entered on August 3, 2017. (Docket No. 47.)

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW, BASED ON FULL COUNT'S DEFAULT

1. LS&Co. has federal trademark registrations for its Arcuate, Tab and Shirt Tab trademarks. LS&Co. continuously has used these trademarks, some for well over a century, to distinguish its products. (FAC ¶¶ 9, 11, 15, 20.)

2. The Arcuate trademark consists of a distinctive pocket stitching design that is the oldest known apparel trademark in the United States still in continuous use. (FAC ¶¶ 11-13 & Ex. E.) LS&Co. has used the Arcuate trademark continuously since 1873 in interstate commerce on jeans and later used it on other products, as well, and owns a number of federal registrations for the mark. (FAC ¶¶ 11-12.)

3. The Arcuate trademark is valid and protectable, and exclusively owned by LS&Co. (FAC ¶¶ 12-13.) The Arcuate trademark is famous and recognized around the world and throughout the United States by consumers as signifying authentic, high quality LEVI'S® products. (FAC ¶ 13.)

4. The Arcuate trademark became famous prior to Defendant's conduct that is the subject of the FAC. (FAC ¶ 13.)

5. LS&Co. also owns the famous Tab trademark, which consists of a textile marker or other material sewn into one of the regular structural seams of the garment. LS&Co. has used the Tab trademark continuously since 1936 in interstate commerce on clothing products, and owns a number of federal registrations for the mark. (FAC ¶¶ 15-18 & Ex. G.)

6. The Tab trademark is valid and protectable, and exclusively owned by LS&Co. (FAC ¶¶ 17-18.) The Tab trademark is famous and recognized around the world and throughout the United States by consumers as signifying authentic, high quality LEVI'S® garments, including jeans and pants. (FAC ¶ 18.)

6. The Tab trademark became famous prior to Defendant's conduct that is the subject

2

1  of the FAC. (FAC ¶ 18.)

2  8. LS&Co. also owns the famous Shirt Tab trademark, which consists of a textile marker or other material sewn into the exterior of a shirt pocket. LS&Co. has used the Shirt Tab trademark continuously since 1969 in interstate commerce and on clothing products, and owns a number of federal registrations for the mark. (FAC ¶ 20-22 & Ex. I.)

9. The Shirt Tab trademark is valid and protectable, and exclusively owned by LS&Co. (FAC ¶¶ 21-22.) The Shirt Tab trademark is famous and recognized around the world and through-out the United States by consumers as signifying authentic, high quality LEVI'S® products. (FAC ¶ 22.)

10. The Shirt Tab trademark became famous prior to Defendant's conduct that is the subject of the FAC. (FAC ¶ 22.)

11. Defendant, Full Count, with knowledge of LS&Co.'s trademarks, has manufactured, promoted and sold garments under the brand "FULL COUNT" that bear designs that are likely to cause confusion regarding the source of the products, or of an affiliation or sponsorship with LS&Co. or its products or the Arcuate and Tab trademarks, as shown in Exhibit P to the FAC. (FAC ¶¶ 40-41 & Ex. P.) The Full Count garments bear designs that are confusingly similar to LS&Co.'s marks. They compete with LS&Co.'s products, and are likely to erode substantial goodwill that LS&Co. has accumulated in its distinctive trademarks over many years. Full Count's sale of these garments occurred after, and without regard for, an injunction against Full Count in a prior action for similar infringements. *See Levi Strauss & Co. vs. Toyo Enterprise Co., Ltd*., et al., U.S.D.C., N.D. Cal., Case No. 4:07-cv- 00245-PJH (Docket No. 8).

12. Once a defendant has defaulted, the well-pleaded allegations of the complaint are accepted as true, and the defendant's liability as framed by the complaint is established. *See Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990), cert. denied, 498 U.S. 1109 (1991).

13. The Lanham Act prohibits the unauthorized use in commerce of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark" where such use is likely to cause confusion, to cause mistake, or to deceive. 15 U.S.C. § 1114(1)(a). To prevail on its trademark

3

infringement claims, LS&Co. must establish that (1) it owns valid and protectable trademarks, and (2) defendants' use of similar designs creates a likelihood of confusion as to the origin or sponsorship of defendants' goods. *See Levi Strauss & Co. v. Blue Bell, Inc*., 778 F.2d 1352, 1354 (9th Cir. 1985).

14. The Lanham Act also renders Defendant liable for diluting LS&Co.'s mark if, "at any time after the owner's mark has become famous, [it] commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." 15 U.S.C. §1125(c).

15. Full Count's challenged products, examples of which are depicted in Exhibit P to the FAC according to the relevant marks, infringe and dilute LS&Co.'s Arcuate and Tab trademarks.

16. Full Count has received a minimum of $112,482.53 in revenue attributable to sales of these infringing and diluting products following entry of the 2009 Injunction. See Supplemental Declarations of Yuji Fukushima and Gordon Heffner. No evidence of costs to produce these revenues appears in the record.

17. Full Count acted willfully and in disregard of LS&Co.'s rights such that there is no equitable basis for limiting LS&Co.'s recovery of Full Count's profits and establishing that this is an exceptional case for purposes of LS&Co.'s entitlement to attorneys' fees. *Nat'l Grange of Order of Patrons of Husbandry v. California State Grange*, 715 F. App'x 747, 748 (9th Cir. 2018) (affirming finding of willfulness and exceptional case status where defendant in trademark infringement action had violated prior permanent injunction).

18. The Lanham Act expressly authorizes courts to grant injunctions to remedy violations of a trademark owner's rights. 15 U.S.C. § 1116(a) (vesting the district court with the "power to grant injunctions, according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right" of a trademark owner). "It is well established that courts can issue injunctions as part of default judgments." *China Cent. Television v. Create New Tech. (HK) Ltd*., 2015 WL 12732432, at \*19 (C.D. Cal. Dec. 7, 2015) (quoting

4

*Sony Music Entm't, Inc. v. Elias*, No. CV 03–6387 DT (RCx), 2004 WL 141959, *3 (C. D. Cal. Jan. 20, 2004)).

19. Full Count's actions have caused and, unless enjoined, will cause LS&Co. irreparable harm for which money damages are inadequate. (FAC ¶ 46.) A permanent injunction is warranted where LS&Co. demonstrates (1) that it has suffered irreparable injury; (2) that there is no adequate remedy at law; (3) "that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted"; and (4) that it is the public's interest to issue the injunction.

20. A permanent injunction is an appropriate remedy for the irreparable harm caused by continuous and ongoing trademark infringement. *See, e.g., Sennheiser Elec. Corp. v. Eichler*, 2013 WL 3811775, at *10 (C.D. Cal. July 19, 2013); *China Cent. Television*, 2015 WL 12732432, at *19; *see also Century 21 Real Estate LLC v. RealtyComp.com*, No. C-14-4774 EMC, 2015 WL 1009660, at *5 (N.D. Cal. Mar. 6, 2015) (granting a permanent injunction against a defaulting defendant because the infringing activity persisted, and because defendant competed directly with the plaintiff).

## III. ORDER OF JUDGMENT

21. Good cause appearing, it is hereby ordered and adjudged as follows:

a. Defendant shall pay $112,482.53 in damages to LS&Co., plus $5,782.88 in attorney's fees and $100.00 in costs, totaling $118,365.41.

b. Commencing as of the "So Ordered" date of this Judgment and Permanent Injunction, Full Count, its principals, agents, affiliates, employees, officers, directors, servants, privies, successors, and assigns, and all persons acting in concert or participating with it or under its control who receive actual notice of this Order, are hereby permanently enjoined and restrained, directly or indirectly, from doing, authorizing or procuring any persons to do any of the following until such time as this Order is dissolved or modified by further Court order:

i. Manufacturing, licensing, selling, offering for sale, distributing, importing, exporting, advertising, promoting, or displaying any garment that displays any of

the designs and/or designations illustrated in Exhibit P to the FAC or any other designation and/or design that is as similar to the Arcuate, Tab, or Shirt Tab trademarks as the designs shown in Exhibit P are to the identified trademarks (hereinafter collectively the "Prohibited Designs and Designations");

ii. Applying, now or in the future, for the federal registration of trademarks for any of the Prohibited Designs and Designations;

iii. Licensing or assigning the Full Count trademark, or the assets or beneficial ownership or control of assets associated with the production of goods under the Full Count trademark, without disclosing and providing actual notice to the licensee, buyer or assignee of such trademarks or assets;

iv. Refusing refunds to any retailer, wholesaler, jobber, distributor or other seller located in the United States or its territories which, upon receiving notice of this Injunction, returns products to Full Count bearing the Prohibited Designs and Designations;

v. Assisting, aiding or abetting any person or entity engaging in or performing any act prohibited by this paragraph.

c. This Injunction shall apply throughout the world to the fullest extent of this Court's jurisdiction. This is a final judgment as to all claims asserted against Defendant in this action.

d. This Court shall retain jurisdiction for the purpose of making any further orders necessary or proper for the construction or modification of this Judgment, the enforcement thereof, and/or the punishment for any violations thereof. If LS&Co. commences an action for enforcement of this Judgment, the prevailing party shall be awarded reasonable attorneys' fees and costs from the other party.

22. For the purpose of any future proceeding to enforce the terms of this Judgment, service by certified or registered mail upon a party or their counsel of record at their last known address shall be deemed adequate notice for each party.

23. Full Count's obligations under this Judgment and Permanent Injunction are

additional to—and do not displace, supersede or preempt—the obligations of Full Count, its affiliates, subsidiaries, assignees, licensees, successors, and all other entities under its control, under any past judgment or injunction, including the 2009 Injunction.

**IT IS SO ORDERED.**

Dated: August 17, 2018

William H. Orrick
United States District Judge